## THE C. P. RAYMOND.[1]

### BROWN and others *v.* THE C. P. RAYMOND, etc.

*(District Court, S. D., New York. September 25, 1886.)*

1 COLLISION — LOSS OF FREIGHT — DEAD FREIGHT — REASONABLE DILIGENCE IN ATTEMPTING TO OBTAIN FRESH CARGO.

Reasonable efforts to secure fresh cargo are required of a vessel which, in consequence of collision, has lost freight, before she can recover dead freight as an item of her damage.

2. SAME — WHARFAGE — DEMURRAGE.

Wharfage and watchmen fees being included in the meaning of the term "demurrage," as employed in the charter-party, should not be allowed as additional items of damage when the charter rates of demurrage are adopted.

On Exceptions to Commissioner's Report.
*Hill, Wing & Shoudy,* for libelants.
*Wilcox, Adams & Macklin,* for claimants.

BROWN, J. On the eleventh of January, 1885, the bark Margaret Mitchell was so damaged by collision, when on her way out to sea, that her cargo of grain had to be discharged, and a part of it sold. 26 Fed. Rep. 281. She was sailing under charter, and, after the sale of the damaged portion of the cargo, the master applied to the char-

---

[1] Reported by Edward Benedict, Esq., of the New York bar.

terers for additional grain to supply the place of that sold. It was not furnished, and, without further effort to procure additional cargo elsewhere, the bark, after being repaired, proceeded on her voyage. The damages reported by the commissioner are in all $6,535. The libelants claimed dead freight, to the amount of $490.55 additional, for loss of the freight on the grain necessarily sold in consequence of the collision. The commissioner disallowed this item, on the ground that the libelants admitted that they did not seek to obtain freight from outside parties.

The loss of freight is undoubtedly a loss to be made good by the wrong-doers in a case of collision, as much as any other item of damage of which the collision is the direct and proximate cause, (*The Cayuga*, 14 Wall. 270;) but this rule does not dispense with reasonable diligence on the part of the vessel injured. Her legal damage is that which arises notwithstanding the use of reasonable diligence and judgment. Very recently this court has applied this qualification to the duty to raise and repair, and has disallowed the additional estimated cost of repair arising from unreasonable neglect to raise the sunken boat earlier. *The Thomas P. Way*, 28 Fed. Rep. 526. The same rule must be applied to dead freight. Had reasonable efforts been made to supply the amount of cargo sold, and none found, I see no reason why the lost freight should not be recovered. The libelants claim that the burden of proof is upon the defendants to show that cargo might have been obtained of other parties than the charterers. But, in the ordinary conditions of trade, shipments of grain or other cargo, at some rates, at least, must be presumed to be procurable within a reasonable time, in the absence of all proof on the subject. As the libelants have not shown any lack of ready freight in the market, and neither applied to the defendants, or to any other parties than the charterers, nor gave the defendants any notice or opportunity to supply cargo to the bark in place of that lost, the presumption is that the loss of dead freight was rather from the master's neglect to seek it than the necessary and direct consequence of the collision. It would be inequitable to impose upon the defendants a loss which presumably might have been avoided, and which they were given no opportunity of preventing. The ruling of the commissioner is, in this respect, sustained.

The defendants have excepted to the number of days for which demurrage is allowed, and also to the allowance of the charge for wharfage and watchmen's fees, in addition to demurrage. Upon consideration of all the circumstances I am not satisfied that the number of days allowed for is excessive. The wharfage and watchmen's fees, as additional items, should, I think, be disallowed, not because they are not themselves proper and recoverable, but because they ought to be deemed included in the rate charged for demurrage. The rate allowed is $57 per day. That is the rate of demurrage stipulated in the charter, and it is testified to as reasonable for this bark. It is con-

ceded that in a suit for "demurrage" under the charter, the charter rate would include wharfage and watchman's fees. It is a mere question of the mode of estimating the damage caused by the delay. When the damage is computed independently of wharfage, the wharfage is to be allowed as a separate item; otherwise not. The adoption of the charter rate of demurrage in this case, and the want of any intimation in the testimony that the charter rate was not a full equivalent, at the time of the injury, for all the items that the charter rate usually covers, lead me to the conclusion that that rate should be deemed to cover wharfage and watchman's fees.

In other respects the report is confirmed.